W. Vincent Grady, S.
A petition for the judicial settlement of the final account of proceedings of John B. Grubb as executor of Catherine Thorn Maloney, deceased, has been filed in this court with an account of his proceedings as such executor and a request for a construction of paragraph numbered “ seventh ” of the last will and testament of said decedent.
After hearing the arguments of respective counsel and after reading the memoranda of law submitted, and after due deliberation thereon, the court finds and decides as follows:
Catherine thorn maloney died a resident of the County of Dutchess and State of New York on December 25, 1936 leaving a last will and testament dated January 31, 1916 and a codicil thereto dated April 16, 1928. At the time of her death her sole distributee was her husband, Richard J. Maloney.
The codicil relates solely to the appointment of John B. Grubb as executor in place of Frank B. Down who prepared the original will and was named therein as sole executor, the said Frank B. Down having died prior to the execution of the codicil.
Catherine thorn maloney in her will directed first that her entire estate be valued and appraised by the executor for inherit *1015 anee tax purposes and that the values set should control the executor and all others in any distribution or division of her estate as directed thereafter in her will. Then she provided for the payment of her just debts and funeral expenses and gave to her husband, Bichard J. Maloney, two thirds of all the rest and residue of her estate, both real and personal.
She further directed that the remaining one third of the estate should be subject to the payment of the taxes, all costs and expenses of every kind and nature incurred in the settlement of the estate including commissions to the executor. She further directed the payment of $16,000 in legacies to three charitable or religious organizations and then bequeathed the sum of $10,000 to a friend, Caroline B. Barrett. The remainder was then disposed of by paragraph numbered “seventh” which provided: “ All the rest, residue and remainder of my property then remaining, I dispose of as follows: My Executor shall turn the same into money including all real property not chosen and selected by my husband under the preceding provision of my Will, and I give my Executor full power to sell and convey at either public or private sale any and all real property owned by me at my decease and not chosen by my said husband as before provided, and to give good and sufficient title thereto, and to do all other acts and things necessary and proper to be done in so reducing my estate then remaining into money. When all of such remaining property shall have been so turned into money I direct my Executor to pay over and distribute the same to my next of kin on my mother’s side to the entire exclusion of my next of kin on my father’s side. I make this disposition and I exclude my next of kin on my father’s side for the reason that all of my property and estate has come to me from my mother’s side of my family, and I therefore regard it as just that the portion not before specifically devised and bequeathed by my Will shall go back to the side from whence it came. Such payment and distribution of such residue of my estate shall be made among my next of kin upon my mother’s side in such manner that each shall receive the share or amount that he or she would have received under the intestate laws of The State of New York as existing at the date of my death had I died intestate and left no next of kin on my father’s side; and on such distribution my remaining estate shall all be treated as personal property although part of the same may represent the proceeds of sale of real estate owned by me at the time of my decease. ’ ’
From an inspection of the family tree of the decedent, it appears that her parents, richard akin and Caroline thorn were first cousins by reason of the fact that her paternal grandfather, *1016 Aaron Burt Akin and maternal grandmother, Catherine Akin Thorn, were brother and sister.
The next of kin of the decedent at the time of her death were her first cousins on her paternal side being the children of her father’s brothers and sisters. In reviewing the family tree further, the court finds various relatives on the maternal side who are related in the ‘ ‘ 6th ’ ’ degree, and that the next of kin on the paternal side are also related to the decedent in the “ 6th ” degree on her maternal side.
All of the relatives related to the decedent through her mother and grandmother in the “ 6th ” degree are also related to her in the “ 6th ” degree through her father. There are some relatives on the maternal side in the “6th” degree through her mother and her grandfather.
If a liberal interpretation is placed upon the words “ next of kin ” so that it would mean nearest relatives, the construction of this phrase and ascertainment of the testatrix’ intention in this light remains. It is necessary to eliminate the closest relatives who are technical next of kin, by reason of the fact that they are on her paternal side. This requires a determination that by the words ‘ ‘ next of kin ’ ’ the decedent meant her closest maternal relatives. However, to seek the testatrix’ intent upon this interpretation leads the court to the fact that the closest relatives on the maternal side are in the sixth degree, and included in the maternal relatives of the sixth degree are the descendants of the brothers and sisters of decedent’s father, which group the will excluded in the first instance as being paternal next of kin.
It appears that the testatrix’ intent was to bequeath the balance of her residuary estate to the closest relatives which she had who were related to her only on her maternal side. This interpretation of the .testatrix’ intent excludes the majority of the relatives related to decedent on her mother’s side in the sixth degree.
The decedent in paragraph “ seventh ” after making the disposition which is construed herein, expresses an intent that the property return to her maternal side as that is the side from which it came. However, the decedent can be presumed to have known that her mother’s side was a combination of the two branches of the family, her mother being an Akin and her father being a Thorn and that her mother was an only child of this marriage. If the court follows with a strict interpretation of the word “maternal” the expression of the testatrix that her property came through her maternal side would seem to indicate mother and grandmother and take the court back to establishing *1017 that the persons interested in this estate included maternal and paternal.
The primary rule of construction is that the intent of testatrix is first to be ascertained and when this has been done the will is to be given effect in the light of that intent. (Matter of Knickenberg, 180 Misc. 217.)
The fact that her only next of kin were paternal kin which was unforeseen cannot affect the meaning of the language used. When the purpose of a testator is reasonably clear by reading the words in their natural and common sense, the courts have not the right to annul or pervert that purpose upon the ground that a consequence of it might not have been thought of or intended by her. In the case at bar we have a carefully drawn will in which the testatrix’ intent is manifestly clear. Where intent is readily ascertainable the court may neither defer nor detract from the will to alter such intent. (Matter of Tamargo, 220 N. Y. 225; Matter of Butler, 9 Misc 2d 892.)
The court finds that at the date of decedent’s death her husband, who was her sole distributee, was not included in the class of 1 ‘ next of kin”. However, such interpretation does not of itself prohibit the husband from taking by intestacy. (Matter of McKeon, 182 Misc. 906.)
The court therefore concludes since testatrix died without leaving maternal next of kin, who were not tainted with paternal blood, that paragraph “seventh” of her will fails and that she died intestate as to the balance of the residuary estate so bequeathed under said paragraph.